VINCINZO CASSOTTA *vs.* WILLIAM BOROSKI.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued April 7th—decided May 14th 1936.

*A. Storrs Campbell,* with whom, on the brief, was *Francis J. Fahey,* for the appellant (defendant).

*Howard W. Alcorn,* for the appellee (plaintiff).

BROWN, J.  The vital issue in this case is the determination of the boundary line between the adjoining lands of the parties which abut the southerly side of the Thompsonville highway in Suffield, that of the plaintiff lying to the west of that of the defendant. These facts found by the trial court are not attacked by the defendant's appeal.  The defendant acquired a half interest in his tract, containing twenty-five acres more or less, in 1912, with full title two years later, and has occupied it since 1912.  The plaintiff acquired his tract of ten acres, more or less, in 1920, but has occupied and used it since procuring a bond for a deed thereof in 1915.  The part of his land nearer the highway is bounded on the east by the defendant's land, and the part further south by the land of Robert Obram.  The defendant's predecessors in title, named Burbank, owned and used their tract from 1904 to 1912, and the plaintiff's predecessors Louis Stinson and Dinah L. Stinson successively from 1908 to 1915 the ten-acre tract.  The only description of the line between the two tracts appearing in any deed in either chain of title, is the general statement that such tract is bounded on that side by the other.  A boundary stone marks the point on the south side of the highway which is the northeast corner of the plaintiff's land

and the northwest corner of the defendant's land, and
has been recognized as such without dispute by the
parties and their predecessors in title for many years.
The northerly and southerly boundaries of the plain-
tiff's land are straight lines, each twenty rods long, and
its westerly boundary is a straight line eighty rods long.
Each of the four warranty deeds in the plaintiff's chain
of title, commencing with one to King in 1897, describes
the tract as being eighty rods long on the east and
west lines and twenty rods long on the north and south
lines, and each, with the exception of the deed to the
plaintiff, states that it contains ten acres of land.  In
that, the qualifying expression "more or less" is added.
Upon acquiring title in 1908, Louis Stinson, by meas-
urement and survey, ascertained all four boundaries
of the tract to be straight lines of the lengths above
recited, containing exactly ten acres.  From 1898 or
earlier, until 1920, there was no continuously main-
tained boundary fence standing on or near the easterly
edge of this property, and during this period, at least
from 1908 on, the whole of it was used and occupied
by or under the owner of record.  In some places near
the easterly border of it, trees showed where wire had
been nailed to them and there were rotten broken
posts and wire lying on the ground.  The fence, dispute
over which gave rise to this litigation, begins at the
stone bound at the northeast corner of the plaintiff's
land, and at its north end that part of it is on the
boundary line between the properties and continues
on substantially so, but, further to the south, from a
tobacco shed on the defendant's land back to his south
line, the defendant erected it in 1920, not on a straight
line, but on a curve to the west of the boundary be-
tween his land and that of the plaintiff, and it en-
croaches on the plaintiff's land to a maximum depth
of fifteen feet and eleven inches.  Upon the plaintiff's

protests, the defendant agreed to fix it, but, instead, reconstructed it in the same location in 1931, having called three men to his aid to prevent interference by the plaintiff. The plaintiff constantly refused to recognize this fence as marking the boundary line and finally brought this action on May 25th, 1932.

By his answer the defendant put the plaintiff to his proof of the allegations of the complaint concerning the boundary line and its location, and the defendant's trespass, and set up as an affirmative defense the existence of a line fence on the west boundary of his land since before the time of his purchase in 1912 and its maintenance in the same location ever since, and his open, visible, and exclusive possession of the premisse under his deeds from the time he acquired the outstanding other one-half interest in 1914. The plaintiff by his reply denied the above allegations as to the line fence. The trial court's memorandum of decision and the only two claims of law made by the defendant at the trial, make clear that the controlling issue there contested and determined, was as to whether this fence had existed since 1912 and he had acquired title by adverse possession of the land up to the same as his westerly boundary. The court determined this issue in favor of the plaintiff, and found the boundary line between the properties to be a straight line eighty rods long, beginning at the stone bound at the northeast corner of the plaintiff's land, and parallel with and twenty rods distant from the westerly boundary of the plaintiff's land.

From the facts in the court's finding already recited, none of which are challenged by the defendant's assignments of error, it is evident that he could not prevail upon his appeal from the court's conclusion that he had not acquired title by adverse possession up to the fence as the westerly boundary of his land. It

suffices to reiterate but these: from 1898 to 1920 there was no continuously maintained boundary fence either on or near the line; from 1908 to 1920 the whole of the plaintiff's tract was used by its then owner; the fence in question, which encroached at one point fifteen feet and eleven inches on the plaintiff's land, was first erected in 1920; and this action was brought in 1932. This state of the record warranted counsel who presented the case in this court, but who had not participated in the trial below, in abandoning the appeal upon this issue, which he did in effect by his brief and expressly in oral argument. The ground now relied upon is that the trial court erred in not concluding that the boundary is where the fence built by the defendant stands, because this follows the line of an old hedge growth and broken fence which had long existed and had been treated by the parties for thirty-five years as the boundary line, the contention being that in view of the ambiguity of description of this boundary in the deeds to both parties, the intent thus expressed by conduct should control in their interpretation.

This claimed error is not one which we are bound to consider upon this appeal. Practice Book, § 363; *Rindge* v. *Holbrook*, 111 Conn. 72, 75, 149 Atl. 231. We do so notwithstanding. As counsel for the defendant stated in argument, in no event could the defendant prevail upon it without obtaining a correction of the finding by the addition of certain facts contained in the draft-finding, and the elimination of other facts from the finding. The former relate primarily to an old fence, broken in places and indicated by a line of bushes, existing since 1904, and extending through bushes and trees along the entire boundary, which was rebuilt from time to time in the same location. The latter relate principally to: temporary fenc-

ing done by Burbank, as owner of the defendant's tract, between 1904 and 1912, by wire between posts and trees as a matter of convenience to keep in his cattle in the fall of the year, but on no definite location and never as a boundary fence, and all located to the east of the fence later built by the defendant; and to the fact that neither the defendant nor his predecessors in title ever claimed any right of ownership in the land described in the plaintiff's deed, prior to 1920. The record discloses conflicting testimony upon these matters, but the evidence amply supports the court's findings as made, and warrants none of the corrections sought which would affect the result. In view of this, and further of the facts already mentioned as found and not challenged upon this appeal, that no boundary fence stood on the east edge of the plaintiff's land between 1908 to 1920, and that the fence built by the defendant encroaches to a maximum depth of fifteen feet and eleven inches, the defendant is not entitled to prevail upon his above claim first advanced upon the appeal.

A study of the entire record reveals that the trial court, which had the benefit of a view of the locus, in addition to the evidence offered in court, very properly concluded, not only that the defendant had acquired no rights in the plaintiff's land by adverse possession, but also that the correct boundary line between the properties as described in the deeds of the parties, is a straight line beginning at the stone bound on the southerly side of the highway at the north, and running southerly eighty rods and parallel to the westerly boundary of the plaintiff's land.

There is no error.

In this opinion the other judges concurred.